UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
Case No.: _____

| | |
|---|---|
| LOUDI VILFRARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EAN HOLDINGS, LLC and ENTERPRISE | ) |
| LEASING COMPANY OF FLORIDA, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

Plaintiff, LOUDI VILFRARD ("Vilfrard" or "Plaintiff"), sues the Defendants, EAN

HOLDINGS, LLC and ENTERPRISE LEASING COMPANY OF FLORIDA, LLC (collectively

"Defendants") and alleges the following:

## **NATURE OF ACTION**

1.      This action arises out of Plaintiff's employment relationship with Defendants,

including her wrongful termination in violation of the Family and Medical Leave Act, 29 U.S.C.

§ 2601 *et seq.* ("FMLA"); Fla. Stat. §440.205 relates to workers' compensation, coercion,

intimidation, and retaliation; Florida Civil Rights Act of 1992, Fla Stat. §760 et seq. ("FCRA");

the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"); Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e *et seq.* ("Title VII"); the Pregnancy

Discrimination Act; and 42 U.S.C. §1981.

## **PARTIES**

2.      At all times material, Vilfrard was a resident of Broward County, Florida.

1

3.     At all times material, Defendants were and are foreign limited liability companies authorized to conduct business in the State of Florida, in Broward County, and are within the jurisdiction of this Court, and were in the business of leasing and renting cars.

4.     At all times material to this Complaint, Vilfrard was an "aggrieved person" as defined by the FCRA, Fla. Stat. §760.02(10). Vilfrard specifically incorporates the definition of "aggrieved person" under the FCRA.

5.     At all times material to this Complaint, Vilfrard was an "employee" as defined by the ADA; 42 U.S.C. §12111(4); and 42 U.S.C.A. § 2000e. Vilfrard specifically incorporates the definition of "employee."

6.     At all times material, Defendants were a "person" and an "employer" as defined by the FCRA, Fla. Stat §760.02(7); 42 USCS § 12111(5); and 42 U.S.C.A. § 2000e. Vilfrard specifically incorporates the definitions of "person" and "employer."

7.     At all times material to this Complaint, Defendants were an "employer" as defined by the ADA and 42 U.S.C. §12111(5).

8.     Vilfrard was an "eligible employee" as defined by the Family and Medical Leave, 29 U.S.C. §2611(2)(A).

9.      At all times material to this Complaint, Defendants were an "employer" as defined by the Family and Medical Leave, 29 U.S.C. §2611(4)(A).

10.     Plaintiff worked for Defendants for more than 1,250 hours and for more than 12 months.

11.     At all times material, Defendants employed at least 50 employees within 75 miles of Plaintiff's worksite.

12.     At all times material, Defendants were and are a private sector employer.

13.     Defendants share common ownership, common management, centralized control of labor relations, common offices and interrelated operations; share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of both companies. Defendants are joint employers.

14.     Each Defendant is sued individually, as joint employers, and as agents of each other.

15.     Vilfrard has retained the undersigned counsel in order that her rights and interests may be protected. Vilfrard has become obligated to pay the undersigned a reasonable attorneys' fees.

## JURISDICTION AND VENUE

16.     The venue of this action is properly placed in this Southern District, because the employment practices hereafter alleged to be unlawful were committed in Broward County, Florida.

17.     At all times material, Vilfrard was and is a resident of Broward County, Florida.

18.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(3) and (4) and 28 U.S.C. §2617.

19.     Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of by Vilfrard occurred within this judicial district. Defendants are foreign limited liability companies doing business in Florida. Defendants engaged in providing car rental services in Broward County, Florida. Vilfrard's employment records are stored and were administered in Broward County.

## PROCEDURAL REQUIREMENTS

20.     Vilfrard has complied with all conditions precedent in filing this action. Any other applicable conditions precedent to bringing this action have occurred, been performed or been

excused before the filing of this lawsuit. Namely, Vilfrard filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on June 30, 2020 and more than 180 days have passed since the filing of her charge. The EEOC issued Vilfrard a right to sue notice on January 7, 2021.

## GENERAL ALLEGATIONS

21.     Vilfrard is an African American female of Haitian ancestry.

22.     Vilfrard is a Seventh Day Adventist. Seventh Day Adventist members honor the Sabbath. The Sabbath starts on Friday evenings until Saturday evening.

23.     Vilfrard worked for Defendants, an automotive rental company, as an Assistant Manager for almost 10 consecutive years, until her wrongful termination on April 27, 2020. As an Assistant Manager, Vilfrard was responsible for assisting to collect debt, assisting customers, overall maintenance of the branch, and managing customer's agreements, rentals, and employees.

24.     Vilfrard was a spectacular employee that managed the most profitable branch in the South Florida Region.

25.     When Vilfrard started working for Defendants, she informed Defendants that she would not work on Saturdays under any circumstances due to her religious beliefs. Specifically, in Vilfrard's initial application to Defendants, she made it clear that she would not work on Saturdays because of her religious beliefs.

26.     Vilfrard specifically requested not to be scheduled to work Friday evenings until Saturday evenings due to her religious practice of honoring the Sabbath, but her job insisted that she work until 6:00 p.m. or later on Friday evenings.

27.     None of Vilfrard's superiors practiced the same religion as Vilfrard.

28.     None of Vilfrard's superiors were African-American citizens of the Haitian ancestry.

29.     The first few years of her employment, Vilfrard did not work on Saturdays and Defendants did not object to her not working Saturdays.

30.     However, several years after she was hired, Defendants' managing employees began to harass and bully Plaintiff about her religion. Defendants' Managers began to continuously ask Vilfrard to work on Saturdays. In response, Vilfrard objected to working on Saturdays and had to continuously remind Defendants' managing employees that she was unable to work on Saturdays because of her religious beliefs. The back and forth, where Defendants would ask Vilfrard if she would work Saturdays and Vilfrard would have to state that she was unable to work Saturdays because of her religious beliefs, continued throughout Vilfrard's employment, until her wrongful termination.

31.     Defendants persisted with its bullying, harassing and intimidating tactics to force Plaintiff to work on Saturdays by requiring Plaintiff to provide proof of her religious observances from her church. Again, Vilfrard obliged, and diligently and obediently provided proof to her Managers.

32.     The more Vilfrard objected to being forced to work during her Sabbath, the worse Defendants treated Plaintiff. For example, Defendants constructed a practice of waiting towards sundown to give Plaintiff additional tasks with the instruction that the task had to be completed the same day. Defendants knew that the task would take until sundown to complete. Defendants' goal was to set a precedent to retaliate against Plaintiff for insisting that Defendants not schedule her or force her to work during her Sabbath, to practice her religion.

33.     As another form of bullying, harassing and intimidating Plaintiff, Managers Todd Gorlick, Kristie (ULN), and Shane James decided that the time for Vilfrard to leave for work was the time identified by Google as "sundown" and that was based on information received from Shane's aunt. Shane's aunt advised Shane that a Seventh Day Adventist employee can leave work at sundown. Vilfrard complained to management and, on one occasion, she contacted Area Managers Steve Goldstein and Dennis Neier, and was crying because it was dark outside and the Manager was pressuring her to continue working because Google listed the time of sundown as 6pm. Nevertheless, Plaintiff's leave time remained "sundown".

34.     Despite Plaintiff's objections, Defendants were unrelenting in its efforts to force Plaintiff to work during her Sabbath. Defendants' management employees continuously and relentlessly questioned Vilfrard as to whether she would be willing to choose her career over her religion if she had to choose between the two. For example, during a meeting with Manager Brittny Juliano ("Juliano"), in or about 2019, Juliano asked Plaintiff what affect her religion would have on her career, including whether Plaintiff would be able to occasionally work on her Sabbath. Plaintiff responded by offering her opinion that her religion did not inhibit her from performing any position she earned successfully, and that she was unable to work on Saturdays because of her religious beliefs.

35.     Defendants impressed upon Plaintiff, that in order to be promoted to Branch Manager, Vilfrard would have to choose her career over her religion.

36.     Vilfrard never deviated from her religious beliefs, and she never worked on Saturdays while employed with Defendants.

37.     Vilfrard worked for Defendants for approximately 10 years and was promoted only once. Her only promotion was as an Assistant Manager while her non-African American

6

coworkers, with the same level of experience as her, but who practiced different religions or who did not practice a religion, were promoted several times to Branch Manager and other higher positions.

38.     Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

39.     Defendants recognized Plaintiff's skills and abilities and often required her to train other employees. Vilfrard trained many others who surpassed her and became higher level employees. For instance, Vilfrard helped train Matthew Maggart, a White male employee who was promoted to Branch Manager; Michael Bernard, a White male employee with less years of experience as Vilfrard was promoted to Branch Manager; and Ryan Hills, a White male employee, who was supervised by Vilfrard and then promoted to Branch Manager.

40.     Emotionally distressed that she was constantly looked over for promotion to Branch Manager, Vilfrard spoke to her Branch Manager, Derek Hart ("Hart"), about a promotion on numerous occasions. In response, Branch Manager Hart would always refer Plaintiff to see the Area Manager, Matt Kirk ("Kirk"), and then Kirk would simply refer Plaintiff back to Hart. Vilfrard objected to these Managers about the fact that White male employees with the same or less experience were promoted at a faster pace than Black, Haitian American women.

41.     Plaintiff was embarrassed and humiliated each time she was overlooked for a promotion she deserved.

42.     When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion. Vilfrard objected to the fact that she was not promoted, and expressed her belief that she not promoted because of her religion and race. Vilfrard

made several requests for a promotion. In response, as a consequence of Vilfrard's inquiry and ensuing requests for a promotion, Defendants started to issue write ups to Vilfrard.

43.     Vilfrard was written up several times after she began inquiring about getting a promotion and complaining that less qualified individuals were being promoted. Vilfrard's first write up was for telling the truth regarding the availability of a vehicle, to a "pretend customer" Defendants organized to call Plaintiff and present Plaintiff with a difficult issue to resolve. Thereafter, Vilfrard was targeted with constant false write ups and was written up for minor things, such as her "attitude" and "leadership."

44.     Once Defendants began issuing write ups to Plaintiff, she became concerned that Defendants were attempting to terminate her employment, because Defendants have a history of discriminating against former employees after learning of their strong beliefs and practices.

45.     In addition to the write-ups, Defendants began to include false accusations against Vilfrard in her performance evaluations. For example, Plaintiff's employee review, which was conducted by Hart, was so exaggerated and defamatory that Kirk and HR Manager Lucy Pelay came to the Boca Raton branch to redo it.

46.     Defendants are known for their bullying, harassing and intimidating tactics toward certain employees. For instance, Defendants have a reputation of failing to promote African American women at the same rate that they promote White male employees. In general, Defendants have a reputation for making female employees work harder than male employees, and, in fact, Defendants' Regional Vice President Ines Hernandez admitted to Plaintiff that female employees needed to work harder than their male counterparts.

47.     Vilfrard was not promoted to Branch Manager.

48.   The unceasing harassment and bullying Plaintiff endured at work, caused Plaintiff to suffer severe emotional trauma and anxiety.

49.   In 2018, Vilfrard became pregnant and immediately informed Defendants.

50.   After becoming pregnant, Vilfrard was sometimes late to work due to pregnancy sickness. During her pregnancy, Plaintiff was diagnosed with a severe iron deficiency. As a result, she suffered from dizziness, severe debilitating headaches, shortness of breath, chest pains/tightness in chest, severe cramps, debilitating heartburn, vomiting, and nausea.

51.   Plaintiff's supervisors were aware of Plaintiff's pregnancy related illnesses, because she provided paperwork from her doctors suggesting that she should not stand on her feet for too long and she suffered from Anemia. Vilfrard's supervisors were also aware because they witnessed her symptoms, including dizziness, severe debilitating headaches, shortness of breath, chest pains/tightness in chest, severe cramps, debilitating heartburn, vomiting, and nausea.

52.   Plaintiff's pregnancy illnesses would often cause her to attend scheduled and emergency doctor's visits to seek medical care and treatment. Plaintiff made her supervisors aware each time she attended a doctor's visit.

53.   Although Plaintiff made her supervisors aware of Plaintiff's illnesses and consistent need to seek medical care and treatment, she feared that if she presented a doctor's note she would lose her job because Defendants had a company policy that if an employee brought in a Doctor's Note or a Medical Certificate, that employee would be immediately and automatically suspended/terminated.

54.   Despite the fact that Defendants were aware, during Plaintiff's pregnancy her supervisors would constantly write Plaintiff up for being late.

55.     Vilfrard gave birth to a beautiful baby boy on November 7, 2019 and then went on maternity leave and returned to work on or about February 7, 2020.

56.     Initially, Defendants informed Vilfrard that she was entitled to only 3 months of leave.

57.     Upon Vilfrard's return to work on or about February 7, 2020, Vilfrard requested intermittent time off to attend doctor's appointments for pregnancy related matters and to provide care for her newborn son. Defendants granted Plaintiff's request for intermittent time off.

58.     After returning from maternity leave, in addition to Defendants' discriminatory tactics against Plaintiff based on her religion and race, Vilfrard was now also ridiculed at work for taking breaks to pump breast milk for her newborn son. Defendants' management staff witnessed and were fully aware of Vilfrard's coworkers' conduct towards her.

59.     Vilfrard complained to Area Manager Jason Schwab ("Schwab") about her coworker, Heather Baker ("Baker"), because Baker always asked Plaintiff to complete tasks when it was time for her to pump breast milk. Baker consistently complained about Plaintiff taking too many breaks. Baker treated Vilfrard badly due to her pregnancy related needs.

60.     Defendants' Management employees were aware of the mistreatment towards Vilfrard at the hands of her coworkers and Defendants never took action to stop the harassment.

61.     The severity and pervasiveness of Defendants' conduct toward Plaintiff substantially worsened over time, creating a hostile work environment. For years, Plaintiff endured Defendants' discriminatory, bullying, harassing and intimidating conduct.

62.     After becoming pregnant, Plaintiff's emotional stability worsened, and she lived anxious, stressed, with lack of self-esteem, and in mental pain because of Defendants' egregious acts of discrimination against her.

63.     On April 27, 2020, Defendants terminated Vilfrard.

64.     Defendants told Vilfrard that she was being terminated due to Covid-19; however, this was pretextual.

65.     The EEOC issued Vilfrard a Notice of the Right to sue dated January 7, 2021.

### COUNT I: INTERFERENCE WITH PLAINTIFF'S FMLA RIGHTS (FAILURE TO PROVIDE FMLA INFORMATION)

66.     Plaintiff repeats and re-alleges paragraphs 2-19 and 49-64 as if fully stated herein.

67.     At all times material, Plaintiff was eligible for FMLA leave.

68.     At all times material, Plaintiff gave proper notice to Defendants by informing them of her pregnancy, and need for leave to give birth and provide care for her newborn child.

69.     Plaintiff provided enough information for Defendants to know that her potential leave may be covered by the FMLA.

70.     Defendants were aware that Plaintiff was unable to work because she was going to give birth and then provide care for her newborn child.

71.     Despite their knowledge of Plaintiff's pregnancy and need for leave, Defendants failed to notify Plaintiff of her eligibility status and rights under the FMLA, and failed to notify Plaintiff whether her leave was or could be designated as FMLA leave. Furthermore, Defendants had a company policy that if an employee brought in a Doctor's Note or a Medical Certificate, that employee would be immediately and automatically suspended/terminated and subsequently replaced.

72.     Instead of informing Plaintiff of her rights under the FMLA, Defendants instilled an improper employment practices and subsequently terminated Plaintiff.

73.     Defendants interfered with Plaintiff's rights under the FMLA when Defendants failed to notify Plaintiff of her eligibility status and rights under the FMLA, failed to notify Plaintiff

whether her leave was or could be designated as FMLA leave, instilled a policy of suspending/terminating employees who brought in a Doctor's Note or Medical Certificate, and punished Plaintiff for "being late" when she attended doctor's visits, by issuing write ups.

74.     As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.   Enter judgment in Vilfrard's favor and against Defendants for interfering with Vilfrard's rights under the FMLA;

b.   Award Vilfrard actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

c.   Reinstatement or compensatory mental damages;

d.   Award Vilfrard liquidated damages;

e.   Award Vilfrard prejudgment interest on her damages award;

f.   Award Vilfrard reasonable costs and attorney's fees;

g.   Award Vilfrard any further relief pursuant to the FMLA; and

h.   Grant Vilfrard such other and further relief as this court deems equitable and just.

## COUNT II: INTERFERENCE WITH PLAINTIFF'S FMLA RIGHTS (TERMINATION)

75.     Vilfrard repeats and re-alleges paragraphs 2-19 and 49-64 as if fully stated herein.

76.     Plaintiff was eligible for FMLA leave during the relevant time period.

77.     At all times material, Plaintiff gave proper notice to Defendants by informing it of her pregnancy and need for leave.

78.     Plaintiff provided enough information for Defendants to know that her potential leave may be covered by the FMLA.

79.     Despite its knowledge of Plaintiff's need to attend doctor's appointments and provide care for her newborn child, Defendants terminated Plaintiff for requesting and taking leave, during the time that Plaintiff required additional medical care and treatment.

80.     By terminating Plaintiff, Defendants interfered with Plaintiff's rights to take leave under the FMLA and denied her the benefits to which she was entitled.

81.     Defendants terminated Plaintiff because she requested, or took, FMLA leave as described above.

82.     As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.  Enter judgment in Vilfrard's favor and against Defendants for interfering with Vilfrard's rights under the FMLA;

b.  Award Vilfrard actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

c.  Reinstatement or compensatory mental damages;

d.  Award Vilfrard liquidated damages;

e.  Award Vilfrard prejudgment interest on her damages award;

f.  Award Vilfrard reasonable costs and attorney's fees;

g.  Award Vilfrard any further relief pursuant to the FMLA; and

h.  Grant Vilfrard such other and further relief as this court deems equitable and just.

## COUNT III: RETALIATION IN VIOLATION OF THE FMLA (TERMINATION)

83.     Vilfrard repeats and re-alleges paragraphs 2-19 and 49-64 as if fully stated herein.

84.     Defendants terminated Plaintiff shortly after Plaintiff notified Defendants about her pregnancy and request for leave.

85.     Defendants terminated plaintiff because she requested leave to give birth and to provide care for her newborn child.

86.     Defendants intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff when she requested to take leave to give birth and to provide care for herself and her child.

87.     Plaintiff's request for leave was a direct and proximate cause of her termination.

88.     As a direct and proximate result of the intentional violations by Defendants of Plaintiff's rights under the FMLA, Plaintiff has been damaged.

**WHEREFORE**, Vilfrard demands judgment against Defendants as follows:

a.   Enter judgment in Vilfrard's favor and against Defendants for its violations of the FMLA;

b.   Award Vilfrard actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

c.   Reinstatement or compensatory mental damages;

d.   Award Vilfrard liquidated damages;

e.   Award Vilfrard prejudgment interest on her damages award;

f.   Award Vilfrard reasonable costs and attorney's fees;

g.   Award Vilfrard any further relief pursuant to the FMLA; and

h.   Grant Vilfrard such other and further relief as this court deems equitable and just.

## COUNT IV: VIOLATION OF TITLE VII –
## DISCRIMINATION BASED ON RACE (DISPARATE TREATMENT)

89.     Vilfrard repeats and re-alleges paragraphs 2-21, 38-48, and 60-65 as if fully as if fully stated herein.

90.     Plaintiff was and is qualified for her job.

91.     Plaintiff is a Black, Haitian American woman.

92.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees who were not Black nor Haitian American because of her race in the terms and conditions of her employment, as described in paragraphs 38 through 48.

93.     Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Black and Haitian American, while her coworkers who were not Black, nor Haitian American, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

94.     Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

95.     Lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

96.     Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Black, Haitian American.

97.     Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted.

98.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

99.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

100.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d. Award Plaintiff punitive damages;

e. Award Plaintiff prejudgment interest on her damages award;

f. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g. Award Plaintiff reasonable costs and attorney's fees; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT V: VIOLATION OF TITLE VII – RETALIATION BASED ON RACE

101.    Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

102.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

103.    Vilfrard is a Black, Haitian American woman.

104.    Defendants intentionally engaged in unlawful employment practices and retaliation in violation of Title VII by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

105.    Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who are not Black nor Haitian American because of her race. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is Black and Haitian American. Plaintiff objected to the disparate treatment based on her race.

106.    Plaintiff's only promotion was as an Assistant Manager while her non-African American coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

107.    Due to Vilfrard's level of experience with the Defendants' company, she should have been promoted to Branch Manager.

108.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

109.    Vilfrard then made several requests for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

110.    In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

111.     Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted and were not wrongfully terminated.

112.     Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

113.     For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

114.     The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

115.     As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

116.     By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

117.     Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights and therefore Vilfrard is entitled to punitive damages according to proof.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c.   Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.   Award Plaintiff prejudgment interest on her damages award;

e.   Award Plaintiff punitive damages;

f.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT VI: VIOLATION OF TITLE VII –
## DISCRIMINATION BASED ON NATIONAL ORIGIN (DISPARATE TREATMENT)

118.    Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully as if fully stated herein.

119.    Plaintiff was and is qualified for her job.

120.    Plaintiff is a Black, Haitian American woman.

121.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees who were not Black nor Haitian American because of her national origin in the terms and conditions of her employment, as described in paragraphs 38 through 48.

122.    Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Black and Haitian American, while her coworkers who were not Black nor Haitian American, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

123.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

19

124.     Lower level Caucasian employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

125.     Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Black, Haitian American.

126.     Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted.

127.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

128.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

129.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c.  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT VII: VIOLATION OF TITLE VII –<br>RETALIATION BASED ON NATIONAL ORIGIN

130.  Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

131.  At all times material, Plaintiff was qualified to perform the essential functions of her job.

132.  Vilfrard is a Black, Haitian American woman.

133.  Defendants intentionally engaged in unlawful employment practices and retaliation in violation of Title VII by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

134.  Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who were not Black, nor Haitian American because of her race. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is Black and Haitian American. Plaintiff objected to the disparate treatment based on her national origin.

135.  Plaintiff's only promotion was as an Assistant Manager while her non-African American coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

136.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

137.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

138.    Vilfrard then made several requests for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

139.    In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

140.    Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted and were not wrongfully terminated.

141.    Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

142.    For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

143.    The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

144.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

145.    By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

146.    Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights and therefore Vilfrard is entitled to punitive damages according to proof.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c.  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff prejudgment interest on her damages award;

e.  Award Plaintiff punitive damages;

f.  Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT VIII: VIOLATION OF TITLE VII – DISCRIMINATION BASED ON SEX (DISPARATE TREATMENT)

147.    Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully as if fully stated herein.

148.    Plaintiff was and is qualified for her job.

149.    Plaintiff is a Black, Haitian American woman.

150.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated male

employees in the terms and conditions of her employment, as described in paragraphs 38 through 48.

151.    Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is a female, while her male coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

152.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

153.    Lower level male employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

154.    Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are female.

155.    Similarly situated employees, specifically Defendants' employees who were not female were, as alleged above, often promoted.

156.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

157.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

158. The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d. Award Plaintiff punitive damages;

e. Award Plaintiff prejudgment interest on her damages award;

f. Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g. Award Plaintiff reasonable costs and attorney's fees; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT IX: VIOLATION OF TITLE VII –**
**RETALIATION BASED ON SEX**

159. Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

160. At all times material, Plaintiff was qualified to perform the essential functions of her job.

161. Vilfrard is a Black, Haitian American woman.

162.     Defendants intentionally engaged in unlawful employment practices and retaliation in violation of Title VII by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

163.     Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated female employees because of her sex. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is a female. Plaintiff objected to the disparate treatment based on her sex.

164.     Plaintiff's only promotion was as an Assistant Manager while her male coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

165.     Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

166.     When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

167.     Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

168.     In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

169.     Similarly situated employees, specifically Defendants' employees who were not female were, as alleged above, often promoted and were not wrongfully terminated.

170.     For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

171.   The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are female.

172.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

173.   By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

174.   Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action bought under Title VII;

c.   Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.   Award Plaintiff prejudgment interest on her damages award;

e.   Award Plaintiff punitive damages;

f.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT X: VIOLATION OF TITLE VII – DISCRIMINATION BASED ON RELIGION
(DISPARATE TREATMENT AND HOSTILE WORK ENVIRONMENT)**

175.     Vilfrard repeats and re-alleges paragraphs 2-20, 22-37, and 60-65 as if fully as if fully stated herein.

176.     Plaintiff was and is qualified for her job.

177.     Plaintiff is a Seventh Day Adventist.

178.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees who were not Seventh Day Adventist in the terms and conditions of her employment, and subjecting Plaintiff to unwelcomed harassment and creating a hostile work environment as described in paragraphs 22 through 37 and 61.

179.     Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Seventh Day Adventist, while her coworkers who were not Seventh Day Adventist, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions. Defendants bullied, harassed, and intimidated Plaintiff in an effort to force her to work on Saturdays.

180.     Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

181.     Lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

182.     Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Seventh Day Adventist.

183.    Similarly situated employees, specifically Defendants' employees who were not Seventh Day Adventist were, as alleged above, often promoted.

184.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

185.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

186.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

c.  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

i.

## COUNT XI: VIOLATION OF TITLE VII – RETALIATION BASED ON RELIGION

187.    Vilfrard repeats and re-alleges paragraphs 2-20, 22-37, and 60-65 as if fully stated herein.

188.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

189.    Vilfrard is a Seventh Day Adventist.

190.    Defendants intentionally engaged in unlawful employment practices and retaliation in violation of Title VII by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 22 through 37.

191.    Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who were not Seventh Day Adventist because of her religion. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is a Seventh Day Adventist. Plaintiff objected to the disparate treatment based on her religion.

192.    Plaintiff's only promotion was as an Assistant Manager while her coworkers who were not Seventh Day Adventist, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

193.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

194.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

195.    Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

196.     In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

197.     Similarly situated employees, specifically Defendants' employees who were not Seventh Day Adventist were, as alleged above, often promoted and were not wrongfully terminated.

198.     Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

199.     For example, lower level employees who were not Seventh Day Adventist received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

200.     The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

201.     As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

202.     By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

203.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

     i.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of Title VII;

j.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in a Title VII action;

k.  Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

l.  Award Plaintiff prejudgment interest on her damages award;

m.  Award Plaintiff punitive damages;

n.  Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

o.  Award Plaintiff reasonable costs and attorney's fees; and

p.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT XII: FCRA DISCRIMINATION
## BASED ON RACE (DISPARATE TREATMENT)

204.  Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully as if fully stated herein.

205.  Plaintiff was and is qualified for her job.

206.  Plaintiff is a Black, Haitian American woman.

207.  Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees who were not Black nor Haitian American in the terms and conditions of her employment, as described in paragraphs 38 through 48.

208.  Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Black and Haitian American, while her coworkers who were not Black nor Haitian American, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

209. Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

210. Lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

211. Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Black, Haitian American.

212. Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted.

213. As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

214. Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

215. The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b. Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c. Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### <u>COUNT XIII: FCRA RETALIATION BASED ON RACE</u>

216.   Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

217.   At all times material, Plaintiff was qualified to perform the essential functions of her job.

218.   Vilfrard is a Black, Haitian American woman.

219.   Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

220.   Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who were not Black nor Haitian American because of her race. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is Black and Haitian American. Plaintiff objected to the disparate treatment based on her race.

221.   Plaintiff's only promotion was as an Assistant Manager while her non-African American coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

222.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

223.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

224.    Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

225.    In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

226.    Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted and were not wrongfully terminated.

227.    Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

228.    For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

229.    The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

230.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

231.    By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

232.     Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights and therefore Vilfrard is entitled to punitive damages according to proof.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.   Award Plaintiff prejudgment interest on her damages award;

e.   Award Plaintiff punitive damages;

f.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**COUNT XIV: FCRA DISCRIMINATION**
**BASED ON NATIONAL ORIGIN (DISPARATE TREATMENT)**

233.     Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully as if fully stated herein.

234.     Plaintiff was and is qualified for her job.

235.     Plaintiff is a Black, Haitian American woman.

236.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated

employees who were not Black nor Haitian American in the terms and conditions of her employment, as described in paragraphs 38 through 48.

237.    Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Black and Haitian American, while her coworkers who were not Black nor Haitian American, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

238.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

239.    Lower level Caucasian employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

240.    Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Black, Haitian American.

241.    Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted.

242.    As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

243.    Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

244.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT XV: FCRA RETALIATION BASED ON NATIONAL ORIGIN

245.    Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

246.    At all times material, Plaintiff was qualified to perform the essential functions of her job.

247.    Vilfrard is a Black, Haitian American woman.

248.    Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

249.    Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who were not Black nor Haitian American because of her national origin. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is Black and Haitian American. Plaintiff objected to the disparate treatment based on her national origin.

250.    Plaintiff's only promotion was as an Assistant Manager while her non-African American coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

251.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

252.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

253.    Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

254.    In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

255.    Similarly situated employees, specifically Defendants' employees who were not Black or Haitian American were, as alleged above, often promoted and were not wrongfully terminated.

256.     Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

257.     For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

258.     The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

259.     As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

260.     By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

261.     Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights and therefore Vilfrard is entitled to punitive damages according to proof.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

i.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

j.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action bought under the FCRA;

k.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

l.   Award Plaintiff prejudgment interest on her damages award;

m.  Award Plaintiff punitive damages;

n.  Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

o.  Award Plaintiff reasonable costs and attorney's fees; and

p.  Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT XVI: FCRA DISCRIMINATION
### BASED ON SEX (DISPARATE TREATMENT)

262.    Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully as if fully stated herein.

263.    Plaintiff was and is qualified for her job.

264.    Plaintiff is a Black, Haitian American woman.

265.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated male employees in the terms and conditions of her employment, as described in paragraphs 38 through 48.

266.    Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is a female, while her male coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

267.    Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

268.    Lower level male employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

269.     Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are female.

270.     Similarly situated employees, specifically Defendants' employees who were not female were, as alleged above, often promoted.

271.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

272.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

273.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.  Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.  Award Plaintiff reasonable costs and attorney's fees; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT XVII: FCRA RETALIATION BASED ON SEX

274. Vilfrard repeats and re-alleges paragraphs 2-20, 38-48, and 60-65 as if fully stated herein.

275. At all times material, Plaintiff was qualified to perform the essential functions of her job.

276. Vilfrard is a Black, Haitian American woman.

277. Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 38 through 48.

278. Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated female employees because of her sex. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is a female. Plaintiff objected to the disparate treatment based on her sex.

279. Plaintiff's only promotion was as an Assistant Manager while her male coworkers, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

280. Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

281. When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

282. Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

43

283.     In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

284.     Similarly situated employees, specifically Defendants' employees who were not female were, as alleged above, often promoted and were not wrongfully terminated.

285.     For example, lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

286.     The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are female.

287.     As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

288.     By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

289.     Defendants' conduct in failing to promote Vilfrard was willful, wanton, and in reckless disregard of Vilfrard's rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

   a.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

   b.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action bought under the FCRA;

   c.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

   d.   Award Plaintiff prejudgment interest on her damages award;

   e.   Award Plaintiff punitive damages;

  f. Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

  g. Award Plaintiff reasonable costs and attorney's fees; and

  h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT XVIII: FCRA DISCRIMINATION BASED ON RELIGION
## (DISPARATE TREATMENT AND HOSTILE WORK ENVIRONMENT)

290. Vilfrard repeats and re-alleges paragraphs 2-20, 22-37, and 60-65 as if fully as if fully stated herein.

291. Plaintiff was and is qualified for her job.

292. Plaintiff is a Seventh Day Adventist.

293. Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the FCRA by treating Plaintiff differently than similarly situated employees who were not Seventh Day Adventist in the terms and conditions of her employment, and subjecting Plaintiff to unwelcomed harassment and creating a hostile work environment as described in paragraphs 22 through 37 and 61.

294. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once to Assistant Manager because she is Seventh Day Adventist, while her coworkers who were not Seventh Day Adventist, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions. Defendants bullied, harassed, and intimidated Plaintiff in an effort to force her to work on Saturdays.

295. Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

296.     Lower level White employees received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

297.     Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful harassment of employees who are Seventh Day Adventist.

298.     Similarly situated employees, specifically Defendants' employees who were not Seventh Day Adventist were, as alleged above, often promoted.

299.     As a direct and proximate result of the actions of Defendants set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain, and mental anguish.

300.     Furthermore, as a direct and proximate result of Defendants' actions, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of Defendants' conduct.

301.     The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b.  Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c.  Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.  Award Plaintiff punitive damages;

e.  Award Plaintiff prejudgment interest on her damages award;

f.   Enjoin Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

## COUNT XIX: FCRA RETALIATION BASED ON RELIGION

302.   Vilfrard repeats and re-alleges paragraphs 2-20, 22-37, and 60-65 as if fully stated herein.

303.   At all times material, Plaintiff was qualified to perform the essential functions of her job.

304.   Vilfrard is a Seventh Day Adventist.

305.   Defendants intentionally engaged in unlawful employment practices and retaliation in violation of the FCRA by terminating Plaintiff after Plaintiff opposed Defendants' behavior outlined in paragraphs 22 through 37.

306.   Namely, during the course of Plaintiff's employment with the Defendants, Plaintiff was treated differently than similarly situated employees who were not Seventh Day Adventist because of her religion. Namely, Vilfrard worked for Defendants for approximately 10 years and was promoted only once because she is a Seventh Day Adventist. Plaintiff objected to the disparate treatment based on her religion.

307.   Plaintiff's only promotion was as an Assistant Manager while her coworkers who were not Seventh Day Adventist, with the same level of experience as her, were promoted several times to Branch Manager and other higher positions.

308.   Due to Vilfrard's level of experience with Defendants' company, she should have been promoted to Branch Manager.

309.    When Vilfrard inquired as to why she was not promoted, she was informed that it was because she did not ask for a promotion.

310.    Vilfrard then made several request for a promotion, as a consequence of her several request for a promotion, Defendants started writing up Vilfrard.

311.    In response to Vilfrard's request for a promotion, Defendants fired Vilfrard.

312.    Similarly situated employees, specifically Defendants' employees who were not Seventh Day Adventist were, as alleged above, often promoted and were not wrongfully terminated.

313.    Vilfrard's work prior to her discharge was more than satisfactory and the sole apparent reason for the termination of Vilfrard's employment was that Vilfrard sought a promotion, as Vilfrard was entitled to do.

314.    For example, lower level employees who were not Seventh Day Adventist received higher promotions than Vilfrard while Vilfrard did not receive the same promotions even though she had more years of experience and expertise.

315.    The Defendants' discriminatory behavior was part of a custom, pattern and practice of unlawful discrimination of employees who are Black and Haitian American.

316.    As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

317.    By reason of Defendants' failure to promote and subsequent wrongful discharge of Vilfrard, Vilfrard has been damaged and Vilfrard has suffered lost wages and suffered emotional distress.

318.   The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Enter judgment in Plaintiff's favor and against the Defendants for its violations of the FCRA;

b.   Award Plaintiff actual damages suffered, including lost wages and any other damages allowed to be recovered in an action brought under the FCRA;

c.   Award Plaintiff compensatory damages under the FCRA for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered and continues to suffer;

d.   Award Plaintiff prejudgment interest on her damages award;

e.   Award Plaintiff punitive damages;

f.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

g.   Award Plaintiff reasonable costs and attorney's fees; and

h.   Grant Plaintiff such other and further relief, as this Court deems equitable and just.

### COUNT XX: FCRA HANDICAP DISCRIMINATION
### (DISPARATE TREATMENT AND FAILURE TO ACCOMADATE)

319.   Plaintiff repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

320.   At all times material, Defendants were aware of Vilfrard's handicap.

321.   Vilfrard provided medical documentation advising that she should work reduced hours because of her inability to stand for long periods of time. She provided the documentation to her Area Manager, Schwab, Branch Manager, Trisha Ray, and HR Manager, Sari Coxson.

322.   Vilfrard's pregnancy and severe iron deficiency qualify as a handicap.

323.   The accommodations requested by Vilfrard were reasonable.

324.    Defendants' failed to accommodate Vilfrard by not promoting Vilfrard and by terminating Vilfrard instead of making reasonable accommodations.

325.    Defendants' failure to accommodate Vilfrard's handicap has caused Vilfrard both irreparable injury and compensable damages.

326.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the ADA when it did not promote Vilfrard and eventually terminated Vilfrard because of her disability or perceived disability. Similarly situated employees, specifically Defendants' employees who were not disabled were often promoted and not terminated.

327.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Vilfrard's statutorily protected employment rights.

328.    Defendants thereby discriminated against Vilfrard in the terms, conditions and benefits of her employment in violation of the FCRA.

329.    As a direct and proximate result of the actions of Defendants set forth above, Vilfrard has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

330.    Furthermore, as a direct and proximate result of Defendants' actions, Vilfrard has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to Vilfrard solely because of Defendants' conduct.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.    Declare that the acts complained of herein are in violation of the FCRA;

b.    Enter judgment in Vilfrard's favor and against Defendants for its violations of the FCRA;

c.     Award Vilfrard actual damages suffered, including lost wages and loss of fringe benefits;

d.     Award Vilfrard compensatory damages for past, present, and future mental anguish, pain and suffering, and humiliation caused by Defendants' intentional discrimination, according to proof;

e.     Award punitive damages, according to proof;

f.     Award Vilfrard the costs of this action together with reasonable attorneys' fees, as provided by the FCRA; and

g.     Grant such other and further relief, as the court deems just and proper.

### COUNT XXI: FCRA RETALIATION BASED ON HANDICAP

331.    Vilfrard repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

332.    Vilfrard engaged in a protected activity when she first informed Defendants that she was pregnant, was going to need leave, had a severe iron deficiency, and when she complained about being demoted.

333.    In response to Vilfrard's engagement in a protected activity, Defendants did not promote Vilfrard and eventually terminated Vilfrard's employment.

334.    As a direct and proximate result of the actions of Defendants' set forth above, Vilfrard has suffered, is now suffering, and will continue to suffer, embarrassment, humiliation, emotional pain and mental anguish.

335.    Furthermore, as a direct and proximate result of Defendants' actions, Vilfrard has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits due to Vilfrard solely because of Defendants' conduct.

336.    The unlawful employment practices complained of herein and the actions of Defendants and its agents were willful, wanton, intentional, and done with malice or with reckless indifference to Vilfrard's statutorily protected employment rights.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.    Declare that the acts complained of herein are in violation of the FCRA;

b.    Enter judgment in Vilfrard's favor and against Defendants for its violations of the FCRA;

c.    Award Vilfrard actual damages suffered, including lost wages and loss of fringe benefits;

d.    Award Vilfrard compensatory damages for past, present, and future mental anguish, pain and suffering, and humiliation caused by Defendants' intentional discrimination, according to proof;

e.    Award Vilfrard punitive damages, according to proof;

f.    Award Vilfrard the costs of this action together with reasonable attorneys' fees, as provided by the FCRA; and

g.    Grant such other and further relief, as the Court deems just and proper.

### COUNT XXII: ADA DISCRIMINATION
### (DISPARATE TREATMENT AND FAILURE TO ACCOMMODATE)

337.    Vilfrard repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

338.    Vilfrard's pregnancy, pregnancy related symptoms, including Vilfrard's hospitalization to give birth, and severe iron deficiency qualify as a disability or as a perceived disability within the meaning of the ADA.

339.    At all times material, Vilfrard was qualified to perform the essential functions of her job, with or without reasonable accommodations.

340.     At all times material, Defendants were aware of Vilfrard's disability or perceived disability.

341.     Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the ADA when it did not promote Vilfrard and eventually terminated Vilfrard because of her disability or perceived disability. Similarly situated employees, specifically Defendants' employees who were not disabled were often promoted and not terminated.

342.     The reasons put forward by Defendants for Vilfrard's termination were and are pretextual and false and were put forward solely to disguise the illegal and ugly reality of Defendants' actions.

343.     The accommodations requested by Vilfrard due to her disability were reasonable.

344.     Defendants' failed to accommodate Vilfrard by not promoting Vilfrard and by terminating Vilfrard instead of making reasonable accommodations.

345.     Defendants acted with either malice or with reckless indifference toward Vilfrard's federally protected rights.

346.     As a direct and proximate result of the above-described actions of Defendants, Vilfrard has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. Furthermore, as a direct and proximate result of such actions by Defendants, Vilfrard has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.     Enter judgment in Vilfrard's favor and against Defendants for its violations of the ADA;

b.      Award Vilfrard actual damages suffered, including lost wages, loss of fringe benefits and damages;

c.      Award Vilfrard compensatory damages under the ADA for embarrassment, anxiety humiliation, and emotional distress Vilfrard suffered and continues to suffer;

d.      Award Vilfrard punitive damages according to proof;

e.      Award Vilfrard prejudgment interest on her damages award;

f.      Grant Vilfrard reasonable costs and attorney's fees; and

g.      Grant Vilfrard such other and further relief, as this court deems equitable and just.

## COUNT XXIII: ADA RETALIATION

347.    Plaintiff repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

348.    Vilfrard's pregnancy and pregnancy related symptoms, including Vilfrard's hospitalization to give birth, qualify as a disability or as a perceived disability within the meaning of the ADA.

349.    At all times material, Vilfrard was qualified to perform the essential functions of her job, with or without reasonable accommodations.

350.    At all times material, Defendants were aware of Vilfrard's disability or perceived disability.

351.    Defendants intentionally engaged in unlawful employment practices and discrimination in violation of the ADA.

352.    Defendants demoted, reduced Vilfrard's salary, and eventually terminated Vilfrard because of her disability or perceived disability.

353.    The reasons put forward by Defendants for Vilfrard's termination were and are pretextual and false and were put forward solely to disguise the illegal and ugly reality of Defendants' actions.

354.    Defendants acted with either malice or with reckless indifference toward Vilfrard's federally protected rights.

355.    As a direct and proximate result of the above-described actions of Defendants, Vilfrard has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. Furthermore, as a direct and proximate result of such actions by Defendants, Vilfrard has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Vilfrard demands judgment against Defendants, as follows:

a.    Enter judgment in Vilfrard's favor and against Defendants for its violations of the ADA;

b.    Award Vilfrard actual damages suffered, including lost wages, loss of fringe benefits and damages;

c.    Award Vilfrard compensatory damages under the ADA for embarrassment, anxiety, humiliation and emotional distress Vilfrard suffered and continues to suffer;

d.    Award Vilfrard punitive damages according to proof;

e.    Award Vilfrard prejudgment interest on her damages award; and

f.    Grant Vilfrard such other and further relief as this court deems equitable and just.

### COUNT XXIV: VIOLATION OF 42 U.S.C. § 1981

356.    Plaintiff repeats and re-alleges paragraphs 2-19, 38-48, and 60-64 as if fully stated herein.

357.   Plaintiff is a member of a protected class of Black citizens.

358.   At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C.A. § 1981, as amended.

359.   When Defendants terminated Plaintiff and did not allow her to re-commence work after her leave, Defendants violated Plaintiff's rights by depriving her of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract as is enjoyed by Caucasian or non-Black/ non-African American citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

360.   Defendants' treatment, practices and policies directed toward Plaintiff denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981, as amended.

361.   Defendants' treatment, practices and policies directed toward Plaintiff denied Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Black/non-African American citizens, in violation of 42 U.S.C.A. § 1981, as amended.

362.   Through its actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's race.

363.   During the course of Plaintiff's employment with Defendants, Plaintiff has been subjected to a discriminatory work environment because of her race.

364.   Defendants, at all times, had knowledge that terminating Plaintiff because of her race was in violation of the law.

365.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

366.    Plaintiff has suffered damages of an on-going and continuous nature.

367.    Plaintiff's race was a motivating factor in the decision to terminate Plaintiff.

368.    Defendants' discriminatory actions toward Plaintiff were willful or the Defendants acted with reckless disregard for whether its actions were prohibited.

**WHEREFORE**, Plaintiff requests that this honorable court:

a.   Enter judgment in Plaintiff favor and against the Defendants for its violations of 42 U.S.C.A. § 1981, as amended;

b.   Award Plaintiff actual damages suffered;

c.   Award Plaintiff punitive and compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

d.   Award Plaintiff prejudgment interest on her damages award;

e.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiff and any employee;

f.   Award Plaintiff reasonable costs and attorney's fees; and

g.   Grant Plaintiff such other and further relief as this court deems equitable and just.

## COUNT XXV: VIOLATION OF THE PREGNANCY DISCRIMINATION ACT – PREGNANCY DISCRIMINATION (DISPARATE TREATMENT)

369.    Plaintiff repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

370.    Defendants' treatment of Plaintiff was motivated by the fact that Plaintiff was pregnant.

371.    Defendants did not treat similarly situated, non-pregnant employees in the manner it treated Plaintiff. Specifically, Defendants did not demote or terminate non-pregnant employees on the basis of their pregnancy status.

372.    Defendants thereby discriminated against Plaintiff in the terms, conditions and benefits of her employment in violation of the Pregnancy Discrimination Act.

373.    Plaintiff has been subjected to disparate treatment because she was pregnant.

374.    Because of Defendants' illegal discrimination of Plaintiff, Plaintiff has suffered both irreparable injury and compensable damage unless and until this court grants relief.

375.    As a direct and proximate result of the above-described actions of Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A declaration that the acts and practices of Defendants complained of in this Complaint are in violation of Title VII and the Pregnancy Discrimination Act;

b. Injunctive relief ordered by the court enjoining and permanently restraining these violations of the Title VII and the Pregnancy Discrimination Act by Defendant;

c. Actual damages suffered, including lost wages, loss of fringe benefits and damages;

d. Compensatory damages for past, present, and future mental anguish, pain and suffering, and humiliation caused by Defendants' intentional discrimination, according to proof;

e. Punitive damages, according to proof;

f. Awarding Plaintiff the costs of this action together with reasonable attorney's fees, as provided by Title VII and the Pregnancy Discrimination Act; and

g. Such other and further relief as the court deems just and proper.

**COUNT XXVI: VIOLATION OF THE PREGNANCY DISCRIMINATION ACT – <u>PREGNANCY RETALIATION</u>**

376.    Plaintiff repeats and re-alleges paragraphs 2-20 and 50-65 as if fully stated herein.

377.    At all times material, Defendants were aware that Plaintiff was pregnant.

378.    Plaintiff engaged in a protected activity when she informed to the Defendants that she was pregnant.

379.    In response, Defendants terminated Plaintiff.

380.    Defendants' discriminatory actions were motivated by an intent to retaliate against Plaintiff for her protected activity under Title VII.

381.    Defendants willfully violated Title VII or acted with reckless disregard for whether its actions were prohibited.

382.    As a direct and proximate result of the intentional violations by Defendants, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. Furthermore, as a direct and proximate result of such actions by Defendants, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendants' conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Enter judgment in Plaintiff's favor and against Defendants for their violations of Title VII;

b. Award Plaintiff actual damages suffered, including lost wages, loss of fringe benefits and damages;

c. Award Plaintiff compensatory damages under Title VII for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

d. Award Plaintiff punitive damages according to proof;

e. Award Plaintiff prejudgment interest on her damages award;

f. Award Plaintiff reasonable costs and attorney's fees; and

g. Grant Plaintiff such other and further relief as this court deems equitable and just.

### JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues triable in each count of this Complaint.

Dated: April 7, 2021.

By: **/s/ Tanesha Blye**
Tanesha Blye, Esquire
Fla. Bar No.: 0738158
Email: tblye@saenzanderson.com
Aron Smukler, Esquire
Fla. Bar No.: 297779
Email: asmukler@saenzanderson.com
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com
SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiff*